## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DWAYNE DAVIS,**                                   Case No. 1:19 CV 1456

    Petitioner,                                   Judge Benita Y. Pearson

    v.                                            Magistrate Judge James R. Knepp II

**WARDEN BRIGHAM SLOAN,**

    Respondent.                           **REPORT AND RECOMMENDATION**

### INTRODUCTION

*Pro se* Petitioner Dwayne Davis ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Brigham Sloan, Warden of the Belmont Correctional Institution ("Respondent") filed an Answer / Return of Writ[1]. (Doc. 13). Petitioner did not file a Reply / Traverse within the allotted time frame (*see* Doc. 5) (permitting 30 days from the Answer for a Reply), but filed a Motion for Summary Judgment (Doc. 16), and Motion for Leave to File Motion to Supplement Motion for Summary Judgment (Doc. 20) within that time period. Also pending are several additional motions from Petitioner. (Docs. 9-1, 11, 12, 20, 21, and 23). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated July 10, 2019). For the reasons discussed below, the undersigned recommends the Petition (Doc. 1) be

---

1. Parties and Courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

DISMISSED as untimely-filed and Petitioner's Motion for Summary Judgment (Doc. 16) be DENIED. The remaining motions (Docs. 9-1, 11, 12, 20, 21, and 23) are DENIED as MOOT.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Eighth District Court of Appeals set forth the following facts on direct appeal:

{¶ 3} In September 2013, Davis pleaded guilty to an amended indictment on the following charges: burglary in violation of R.C. 2911.12(A)(1), a second-degree felony; burglary in violation of R.C. 2911.12(B), a fourth-degree felony; and intimidation of a crime victim or witness in violation of R.C. 2921.04(B), a third-degree felony. These charges involved different victims.

{¶ 4} One month later, after referring Davis for a presentence investigation report, the trial court held the sentencing hearing. At the hearing, the court first heard from defense counsel, who discussed Davis's drug addiction and his genuine remorse for his actions. Davis also addressed the court, apologizing for his actions and attributing them to his drug addiction and mental health problems.

{¶ 5} Next, the trial court heard from one of the victims who discussed the emotional damage that Davis's actions have inflicted upon her and her family by his "total invasion" of their home. She discussed how her four children no longer feel safe in their own home. The victim urged the court to impose the maximum sentence, noting that Davis's record "tells a story of 16 releases from prison, treatment, and asking for treatment." A neighbor of one of the homes burglarized also addressed the court, explaining the terror that Davis's actions have inflicted upon their neighborhood. The prosecutor also addressed the court, noting the fear that Davis inflicted upon another victim by threatening him when the victim tried to get Davis out of his house.

{¶ 6} The trial court then addressed Davis, asking him the longest prison term that he had previously served. Davis indicated that it was four years and further stated that he did not use drugs while in prison. The trial court further discussed the danger

2

associated with the crime of burglary, including for Davis, who could have justifiably been killed. The trial court ultimately imposed a total prison term of ten years: eight years in prison on the second-degree burglary count; 18 months in prison on the fourth-degree burglary count, to run concurrently to the other burglary count; and two years on the intimidation of a crime victim, to run consecutive to the eight-year burglary count.

*State v. Davis*, 2015 WL 6550721, at *1 (Ohio Ct. App.) ("*Davis I*").

## PROCEDURAL HISTORY

State Court Conviction

A Cuyahoga County grand jury indicted Petitioner in May 2013 in case number 574008-13-CR on one count of second-degree felony burglary, one count of third-degree felony attempted burglary, one count of possession of criminal tools, two counts of criminal damaging, and one count of intimidation of a crime victim or witness. (Ex. 1, Doc. 13-1, at 6-8). The first burglary charge carried notice of prior conviction and repeat violent offender specifications. *Id.* at 6. Petitioner was appointed counsel, and pleaded not guilty. (Ex. 2, Doc. 13-1, at 9). Petitioner's counsel subsequently made an oral motion, which the trial court granted, to refer Petitioner to the Court Psychiatric Clinic. (Ex. 3, Doc. 13-1, at 10). Petitioner's counsel later stipulated to the Clinic's determination that Petitioner was sane at the time of the act and competent to stand trial. (Ex. 4, Doc. 13-1, at 11).[2]

In September 2013, Petitioner pleaded guilty to a second-degree felony burglary charge (amended to delete notice of prior conviction and repeat violation offender specifications), a fourth-degree felony burglary charge (amended from a third-degree felony attempted burglary charge), and intimidation of crime victim or witness as charged. (Ex. 7, Doc. 13-1, at 19). The

---

2. In July 2013, Petitioner filed a *pro se* motion to dismiss pursuant to Ohio Criminal Rule 41. (Ex. 5, Doc. 13-1, at 12-17). The following month, the State filed a motion to join cases CR-574008 and CR-572948. (Ex. 6, Doc. 13-1, at 18).

State nolled the remaining charges. *Id.* The trial court accepted Petitioner's plea. *Id.* The Court

then sentenced Petitioner to eight years in prison on the second-degree felony burglary conviction,

eighteen months on the fourth-degree felony burglary conviction (to be served concurrently), and

two years on the intimidation charge (to be served consecutively), for an aggregate 10-year prison

term. (Ex. 8, Doc. 13-1, at 19*); see also* Doc. 13-3 (Change of Plea and Sentencing Transcript).

The sentencing entry was journalized on October 3, 2013. *See* Ex. 8, Doc. 13-1, at 19.

Delayed Direct Appeal

On February 23, 2015, Petitioner filed a *pro se* motion for leave to file a delayed direct

appeal (Ex. 9, Doc. 13-1, at 20-25), and accompanying motion to appoint appellate counsel (Ex.

10, Doc. 13-1, at 29-30). The appellate court granted both motions. (Exs. 11-12, Doc. 13-1, at 31-

32). Through counsel, Petitioner raised three assignments of error on direct appeal:

1. The Appellant received ineffective assistance of counsel at the time of his plea
   thereby rendering his convictions void under the Sixth and Fourteenth
   Amendments of the United States Constitution and Article I, Section 16 of the
   Ohio Constitution.

2. The trial court abused its decision [sic] when it denied the Appellant's motion
   to withdraw his guilty plea in violation of the Fourth, Fifth, and Fourteenth
   Amendments to the United States Constitution.

3. The trial court failed to make all the factual findings necessary to sentence
   Appellant to consecutive sentences under R.C. 2929.14.

(Ex. 13, Doc. 13-1, at 34-65). The State filed a brief in response (Ex. 14, Doc. 13-1, at 67-75), and

on October 29, 2015, the state appellate court issued its decision (Ex. 17, Doc. 13-2, at 86-97);

*Davis I*, 2015 WL 6550721[3]. It first noted, regarding the scope of the appeal:

---

3. Prior to its decision, the state appellate court granted leave to Petitioner "to file an amended
notice of appeal . . . that reflects the date of the judgment he is appealing", noting that the original
notice of appeal cited a February 3, 2015 judgment date, but an October 3, 2013 journal entry was
attached. (Ex. 15, Doc. 13-1, at 77). Through counsel, Petitioner did so. (Ex. 16, Doc. 13-1, at 79).

Initially, we note that this court granted Davis a delayed appeal to challenge the final order of conviction, dated October 3, 2013. Davis, however, raises an assignment of error related to the merits of his motion to withdraw his guilty plea, filed on December 4, 2014, over a year after the October 3, 2013 final order of conviction. The trial court has not yet ruled on this motion. Because this matter is not properly before this court as part of the instant appeal, we summarily overrule Davis's second assignment of error.

(Ex. 17, Doc. 13-1, at 90); *Davis I*, 2015 WL 6550721, at *2. The state appellate court then denied Petitioner's other two claims on the merits, but remanded the case to the trial court "for the limited purpose of incorporating nunc pro tunc the consecutive sentence findings made at the sentencing into the court's entry." (Ex. 17, Doc. 13-1, at 96); *Davis I*, 2015 WL 6550721, at *5.

Petitioner did not appeal the state appellate court's decision to the Ohio Supreme Court and his deadline to do so expired 45 days later on December 14, 2015. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).[4]

Remanded Proceedings

On November 3, 2015, the trial court filed a *nunc pro tunc* journal entry to add that "consecutive sentence findings were placed on the record and need to be incorporated into the journal entry." (Ex. 18, Doc. 13-1, at 98). The court then listed those findings. *See id.*

Motion to Withdraw Guilty Plea

Prior to the filing of his delayed direct appeal, on December 4, 2014, Petitioner filed a *pro se* motion to withdraw his guilty plea pursuant to Ohio Criminal Rule 32.1. (Ex. 19, Doc. 13-1, at 99-110). Therein, he asserted three constitutional violations: 1) Sixth Amendment right to counsel; 2) Fourteenth Amendment right to due process; and 3) Fourth Amendment right to be free from

---

4. Forty-five days after October 29, 2015 was Sunday, December 13, 2015. Pursuant to Ohio Supreme Court Practice Rule 3.01(A)(1), the undersigned uses the next business day, Monday, December 14, 2015. Respondent miscalculates the 45-day period and incorrectly states Petitioner's appellate filing deadline was Monday, December 7, 2015. *See* Doc. 13, at 6, 13.

unlawful searches and seizures. *Id.* The State filed a brief in opposition arguing Petitioner's claims were barred by *res judicata* or meritless. (Ex. 20, Doc. 13-1, at 112-23). Petitioner filed a "Motion of Addendum" to his motion to withdraw (Ex. 21, Doc. 13-1, at 124-25), and a rebuttal to the State's brief (Ex. 22, Doc. 13-1, at 126-30). On February 10, 2016, the trial court summarily denied Petitioner's motion to vacate. (Ex. 23, Doc. 13-1, at 131).

On February 22, 2016, Petitioner filed a timely *pro se* notice of appeal. (Ex. 24, Doc. 13-1, at 132-33. In his brief, Petitioner raised seven assignments of error:

1. The trial court abused its decision [sic] when it denied the Appellant's motion to withdraw his guilty plea in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

2. The Appellant received ineffective assistance at the time of his plea thereby rendering his convictions void under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Ohio Constitution.

3. Trial counsel[] failed to properly prepare.

4. Trial counsel's failure to investigate.

5. Trial counsel's wrongful advice.

6. Trial counsel's refusal to challenge prosecution's case and refusal to engage in adversarial process to defend Appellant's constitutional rights.

7. Trial counsel's coerced guilty plea.

(Ex. 25, Doc. 13-1, at 142-205). Petitioner subsequently filed a "Supplement/Amendment" to his merit brief. (Ex. 26, Doc. 13-1, at 206-10). The State filed a brief in response. (Ex. 27, Doc. 13-1, at 212-26). Petitioner subsequently filed a motion to amend (Ex. 28, Doc. 13-1, at 227-49), which the appellate court denied (Ex. 29, Doc. 13-1, at 250). On September 15, 2016, the appellate court affirmed the trial court's decision. (Ex. 30, Doc. 13-1, at 251-56); *State v. Davis*, 2016 WL

4983175 (Ohio Ct. App.). Petitioner filed a motion for reconsideration (Ex. 31, Doc. 13-1, at 257-82), which the appellate court denied on October 26, 2016 (Ex. 32, Doc. 13-1, at 283).

Petitioner did not appeal this decision to the Ohio Supreme Court and his deadline to do so expired 45 days later on December 12, 2016. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).[5]

<u>Motion to Vacate or Set Aside</u>

On January 10, 2017, Petitioner filed a petition to vacate or set aside judgment of conviction or sentence pursuant to Ohio Revised Code § 2953.21. (Ex. 33, Doc. 13-1, at 284-332). He also filed a motion for summary judgment. (Ex. 34, Doc. 13-1, at 333-72 and Doc. 13-2, at 6-49). The State filed responses in opposition to both (Exs. 35-36, Doc. 13-2, at 50-61). The trial court denied Petitioner's motion for summary judgment (Ex. 37, Doc. 13-2, at 62), and – after several further supplemental filings from Petitioner, and responses from the State (Exs. 38-42, Doc. 13-2, at 63-96) – denied Petitioner's "untimely petition . . . for postconviction relief" on June 27, 2017 (Ex. 43, Doc. 13-2, at 97).

Petitioner filed a timely notice of appeal on July 18, 2017. (Ex. 44, Doc. 13-2, at 98-105). In his brief, he raised two assignments of error:

1. The trial court abused its discretion when it denied Appellant's post-conviction petition whereas Appellant established exception needed pursuant [to] R.C. 2953.23(A)(1), R.C. 2953.23(A)(1)(b).

2. The trial court committed prejudicial error by denying Appellant's summary judgment without setting forth specific facts which prove there remains a genuine issue to be litigated pursuant to Civ. R. 56(E).

(Ex. 45, Doc. 13-2, at 109). He further listed three "Issues Presented":

1. Whether Appellant's post-conviction petition was barred by res judicata.

---

5. Forty-five days after October 26, 2016 was Saturday, December 10, 2016. Pursuant to Ohio Supreme Court Practice Rule 3.01(A)(1), the undersigned uses the next business day, Monday, December 12, 2016.

2.  Whether Appellant waived constitutional claims by his admission of guilt.

3.  Albeit untimely, did Appellant satisfy the exception for untimely filing under R.C. 2953.23(A) and "pled sufficient operative facts" supported by evidence dehors the record submitted with petition.

*Id.* The State filed a responsive brief (Ex. 46, Doc. 13-2, 140-48), and Petitioner filed a reply (Ex. 47, Doc. 13-2, at 149-66). On March 1, 2018, the state appellate court affirmed the trial court's judgment, finding the petition untimely and Petitioner's claims therein barred by *res judicata*. (Ex. 48, Doc. 13-2, at 167-74); *State v. Davis*, 2018 WL 1129715 (Ohio Ct. App.).

Petitioner did not file an appeal of this decision to the Ohio Supreme Court and his time to do so expired 45 days later on April 16, 2018. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).[6]

State Habeas Petitions

On April 19, 2018, Petitioner filed a state habeas petition pursuant to Ohio Revised Code § 2725.06. (Ex. 49, Doc. 13-2, at 175-220). Therein, he raised challenges to the underlying criminal complaint in his case, and argued violations with regard to a warrantless arrest and search. *See id.* Respondent filed a motion to dismiss and/or for summary judgment (Ex. 50, Doc. 13-2, at 221-24), which the state appellate court granted on July 23, 2018 (Ex. 51, Doc. 13-2, at 225-28); *State ex rel. Davis v. Sloan*, 2018 WL 3533021 (Ohio Ct. App.). The state appellate court noted Petitioner's habeas claims were non-cognizable and failed to state a claim upon which relief could be granted; it further noted Petitioner did not allege the trial court lacked subject matter jurisdiction to convict him. *Id.* at 227. Petitioner did not appeal this decision to the Ohio Supreme Court and

---

6. Forty-five days after March 1, 2018 was Sunday, April 15, 2018. Pursuant to Ohio Supreme Court Practice Rule 3.01(A)(1), the undersigned uses the next business day, Monday, April 16, 2018. Respondent again miscalculates this date and states Petitioner's appellate filing deadline was Monday, May 1, 2018. *See* Doc. 13, at 9.

his time to do so expired 45 days later on September 6, 2018. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).

On August 1, 2018, Petitioner filed a second state habeas petition alleging the trial court lacked jurisdiction due to deficiencies in the criminal complaint. (Ex. 52, Doc. 13-2, at 232-47). Respondent again filed a motion to dismiss and/or motion for summary judgment. (Ex. 53, Doc. 13-2, at 248-57). On October 29, 2018, the state appellate court granted Respondent's motion and dismissed the petition. (Ex. 54, Doc. 13-2, at 258-61); *State ex rel. Davis v. Sloan*, 2018 WL 5430630 (Ohio Ct. App.). Petitioner again did not appeal this determination to the Ohio Supreme Court and his time to do so expired 45 days later on December 13, 2018. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).

On November 9, 2018, Petitioner filed a third state habeas petition, this time alleging an equal protection violation, malicious prosecution, defects in his indictment, arrest, and initial appearance, and a "sham legal process" under Ohio Revised Code 2921.52(B). (Ex. 55, Doc. 13-2, at 262-92). Respondent again filed a motion to dismiss and/or for summary judgment. (Ex. 56, Doc. 13-2, at 293-307). On December 31, 2018, the state appellate court granted Respondent's motion and dismissed the petition. (Ex. 57, Doc. 13-2, at 308-11); *State ex rel. Davis v. Sloan*, 2018 WL 6841454 (Ohio Ct. App.). Petitioner again did not appeal this determination to the Ohio Supreme Court and his time to do so expired 45 days later on February 14, 2019. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).

On March 28, 2019, Petitioner filed a fourth state habeas petition – this time in the Ohio Supreme Court – alleging warrantless arrest and search violations (Ex. 58, Doc. 13-2, at 312-33); he subsequently filed an amendment to add exhibits (Ex. 59, Doc. 13-2, at 334-52). On May 8, 2019, the Ohio Supreme Court dismissed the petition *sua sponte*. (Ex. 60, Doc. 13-2, at 353).

Petitioner then filed a motion for leave to file a supplemental complaint (Ex. 61, Doc. 13-2, at 354-58), which the Ohio Supreme Court denied on May 23, 2019 (Ex. 62, Doc. 13-2, at 359).

### FEDERAL HABEAS CORPUS

Petitioner raises the following five grounds for relief in his habeas Petition filed on June 10, 2019[7]:

| | |
|---|---|
| **GROUND ONE:** | Ineffective assistance of counsel; fail to investigate; fail to properly prepare; wrongful advice; refused to challenge prosecution's case; refused to engage in adversarial process to defend client's constitutional rights. |
| **GROUND TWO:** | Fourth and Fourteenth Amendment violation: warrantless arrest (in home); warrantless entry; warrantless search. |
| **GROUND THREE**: | Fourteenth Amendment violation: Prosecutorial misconduct. Prosecution charged Petitioner without having probable cause; no warrant from warrantless arrest; no probable cause ever determined. |
| **GROUND FOUR:** | "Sufficiency of the Evidence": Fourteenth Amend violation: none of the charges had the essential elements proven, there was not enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime(s) beyond a reasonable doubt. |
| **GROUND FIVE:** | Fourteenth Amendment violation as well as Fourth Amendment. Fabrication of probable cause. Lying and urging prosecution to initiate an unjust prosecution, deliberately omitting information material to the finding of probable cause. Deliberate falsehoods and reckless disregard for the truth. Police and prosecution lied: permitting warrantless arrest, entry, and search. Never filing affidavit establishing probable cause. |

(Doc. 1, at 5-11); *see also* Doc. 1-1 (Memorandum in Support of Petition).

---

7. Pursuant to the federal prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1, at 15 (representing Petition was placed in the prison mailing system on June 10, 2019).

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

In her Answer, Respondent contends the Petition is time-barred, procedurally defaulted, and meritless. (Doc. 13). Petitioner did not file a Reply / Traverse as contemplated by the Court's scheduling order, but filed a Motion for Summary Judgment (Doc. 16) and "Motion for Leave of Court to file Motion to Supplement Motion for Summary Judgment" (Doc. 20) within the timeframe for filing such a Reply (*see* Doc. 5) (permitting 30 days after Respondent's Answer for Petitioner's Reply). The undersigned has therefore considered the arguments therein as though they were raised in Reply. For the reasons discussed below, the undersigned recommends the Petition be DISMISSED as untimely-filed, and Petitioner's Motion for Summary Judgment be DENIED. The undersigned also DENIES as MOOT Petitioner's remaining motions (Docs. 9-1, 11, 12, 20, 21, and 23).

<u>AEDPA Statute of Limitations</u>

The AEDPA provides for a one-year statute of limitations during which a prisoner in state custody may file a petition for habeas relief in federal court. 28 U.S.C. § 2244(d)(1). The limitation period begins with any of the following scenarios, whichever is latest:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

12

28 U.S.C. § 2244(d)(1). Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009).

Petitioner's judgment became final on Monday, December 14, 2015, the deadline for filing a timely appeal with the Ohio Supreme Court. *See Davis I*, 2015 WL 6550721 (appellate decision dated October 29, 2015)[8]; Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).[9] The statute of limitations would have begun to run the following day, December 15, 2015, and expired one year later on December 15, 2016, absent any basis for statutory or equitable tolling.

*Statutory Tolling*

A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). State courts are the final arbiters of whether a state collateral action is considered timely, and thus, properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408,

---

8. The November 3, 2015 *nunc pro tunc* judgment entry did not restart the statute of limitations clock because it did not alter Petitioner's term of incarceration or create a new judgment; it merely corrected a clerical error—in particular, the *nunc pro tunc* judgment entry added language stating the trial court's rationale for imposing consecutive sentences, which the trial court stated during the sentencing hearing but which were omitted from the original judgment entry. *See Crangle v. Kelly*, 838 F.3d 673, 680 (6th Cir. 2016) (explaining that a "*nunc pro tunc* order [that] merely correct[s] a record to accurately reflect the court's actions" is not "a new sentence that resets the statute of limitations" clock).
9. As stated above, this is the first business day after the designated time period expired. *See* Ohio S. Ct. Prac. R. 3.03(A)(1).

417 (2005). A state post-conviction petition rejected by the state court on timeliness grounds is not properly filed and, therefore, it cannot serve as the basis for statutory tolling. *Allen v. Siebert*, 552 U.S. 3, 5 (2007); *Pace*, 544 U.S. at 413-17; *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003) ("[F]ederal courts . . . defer to a state court's judgment on issues of state law and, more particularly, on issues of state procedural law." (alteration in original) (citations omitted)). Further, once the statute of limitations expires, state collateral review proceedings can no longer serve to avoid the time-bar. *Vroman*, 346 F.3d at 602 ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." (internal quotation and citation omitted)).

In this case, at the time of Petitioner's direct appeal, his collateral motion to vacate his guilty plea – filed December 4, 2014 – was still pending. *See* Ex. 19, Doc. 13-1, at 99-110. The pendency of this properly filed motion thus statutorily tolled Petitioner's AEDPA limitations period. *See* 28 U.S.C. § 2244(d)(2). The trial court ultimately denied the motion on February 22, 2016 (Ex. 23, Doc. 13-1, at 131), and the appellate court denied Petitioner's subsequent appeal on September 15, 2016 (Ex. 30, Doc. 13-1, at 251-56). The appellate court then denied Petitioner's motion for reconsideration on October 26, 2016 (Ex. 32, Doc. 13-1, at 283).[10] Petitioner did not appeal this determination to the Ohio Supreme Court and his deadline to do so expired 45 days later on December 12, 2016. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).[11]

Thus, Petitioner's one-year AEDPA statute of limitations began to run the following day, December 13, 2016, and expired one year later on December 13, 2017, absent any other basis for

---

10. Under Ohio's rules, a "timely filed" application for reconsideration tolls the time for filing a notice of appeal with the Ohio Supreme Court. Ohio S. Ct. Prac. R. 7.01(A)(5)(a).

11. Forty-five days after October 26, 2016 is Saturday, December 10, 2016. Pursuant to Ohio Supreme Court Practice Rule 3.01(A)(1), the undersigned uses the next business day, Monday, December 12, 2016.

14

statutory or equitable tolling. For the reasons discussed below, Petitioner has shown no other basis for tolling.

Petitioner's subsequently filed petition to vacate cannot serve to toll his AEDPA statute of limitations. That petition, filed January 10, 2017 (Ex. 33, Doc. 13-1, at 284-32), was filed within the one-year AEDPA period, but was denied by the trial court as untimely. (Ex. 43, Doc. 13-2, at 97) ("Defendant's untimely petition, filed on 01-10-2017, for postconviction relief is denied."). This Court defers to the state court's determination regarding timeliness. *Pace*, 544 U.S. at 417; *Vroman*, 346 F.3d at 603. And, a timely appeal from an untimely postconviction petition does not toll the statute of limitations. *See Pace*, 544 U.S. at 414 ("When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of 2244(d)(2)." (quoting *Carey v. Saffold*, 536 U.S. 314, 226 (2002)). As another district judge within this district thoroughly explained – the rationale from *Pace* precludes tolling of the time period during an appeal from a denial of an untimely post-conviction action:

> [I]n *Pace*, the Supreme Court expressed reservations about the wisdom of tolling where a petition is untimely. 544 U.S. at 413 ("On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.") Similar concerns are applicable here. A petitioner should not enjoy the benefit of statutory tolling by promptly appealing from an otherwise improperly filed collateral petition. The *Pace* court, while not confronted with identical circumstances, held as follows: "[w]hat we intimated in *Saffold* we now hold: When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." 544 U.S. at 414 (*citing Carey v. Saffold*, 536 U.S. 214 (2002)).
>
> > [Footnote 5] In *Lynch v. Wilson*, 2009 U.S. Dist. LEXIS 6702 at **4–5, 2009 WL 233847 (N.D.Ohio Jan. 30, 2009) (Oliver, J.), the court addressed whether appeals from a petitioner's improperly filed post-conviction, collateral actions tolled the statute of limitations. The *Lynch* court rejected the report and recommendation of the Magistrate Judge and found that the subsequent appeals from

> improperly filed postconviction actions failed to toll the statute of limitations under the AEDPA.
>
> This Court agrees with the *Lynch* decision and finds that the concerns of undue delay expressed by the Supreme Court preclude statutory tolling during the pendency of an appeal from an untimely post-conviction or collateral application. This Court recognizes that the outcome might be different if the appeal leads to a reversal of the lower court's decision and results in a finding that the application was "properly filed" under state law. Here, however, the Ohio Supreme Court dismissed the appeal. (ECF No. 9–1, Exh. 20.) "Where the last reasoned order in a state court proceeding relies on a procedural error, later unexplained orders are presumed to rest on the same ground." *Palmer v. Lavigne*, 43 Fed. Appx. 827, 829 (6th Cir.2002) (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).
>
> *Parsons v. Turner*, Case No. 3:12–cv–02300, 2013 U.S. Dist. LEXIS 183368 at * *10–11 (N.D.Ohio, Nov. 19, 2013), *adopted by* 2014 U.S. Dist. LEXIS 4426, 2014 WL 197781 (N.D.Ohio Jan. 14, 2014.).
>
> Here too, if Sands enjoyed the benefit of tolling while his appeals with the state appellate court and Ohio Supreme Court were pending, his petition would be timely. However, the state appellate court's opinion held that Sands' post-conviction filing was untimely and, in any event, without merit. (ECF No. 6–26, Exh. 26.) The Supreme Court of Ohio declined to accept jurisdiction without a reasoned opinion. *See* 2015–Ohio–554. For the same reasons stated above in *Parsons*, the Court continues to believe that an appeal from an untimely post-conviction petition has no tolling effect.

*Sands v. Bunting*, 2015 WL 6658725, at *8 (N.D. Ohio); *see also Miller v. LaRose*, 2014 WL 4794529, at *9 (N.D. Ohio) ("Miller's appeals taken from his untimely state court filings did not toll the statute of limitations."). This rationale applies equally here where Petitioner's January 2017 post-conviction petition was denied as untimely (Ex. 43, Doc. 13-2, at 97), the appellate court affirmed (Ex. 48, Doc. 13-2, at 167-74), and Petitioner did not appeal to the Ohio Supreme Court. Thus, this cannot serve as a basis for statutory tolling.

Nor can Petitioner's four state habeas petitions – filed in April 2018, August 2018, November 2018, and March 2019 – toll his AEDPA statute of limitations. This is so because the limitations period expired – on December 13, 2017 – before each was filed. *Vroman*, 346 F.3d at

602 ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." (internal quotation and citation omitted)).

Petitioner filed his instant habeas petition on June 10, 2019. *See* Doc. 1, at 15. Based on the above, it remains untimely unless Petitioner can show entitlement to equitable tolling, or that the limitations period should be excused due to actual innocence.

### Equitable Tolling

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland v. Florida*, 560 U.S. 631, 645 (2010), "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace*, 544 U.S. at 418. The petitioner bears "bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011); *see also Robertson*, 624 F.3d at 784 ("The party seeking equitable tolling bears the burden of proving he is entitled to it."). The Sixth Circuit has explained that "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Vroman*, 346 F.3d at 604 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)).

17

The undersigned finds Petitioner has not satisfied his burden to show any "extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation omitted). Petitioner concedes that his Petition "is past the one-year statute of limitations", but contends he can "show reasons why [the] Petition is untimely as well as defense for any procedural defaults." (Doc. 1-1, at 1). However, in the Memorandum in Support of his Petition (Doc. 1-1), Motion for Summary Judgment (Doc. 16), and Motion for Leave of Court to File Motion to Supplement Motion for Summary Judgment (Doc. 20), Petitioner does not present any excuse for his untimely filing. Rather, he repeatedly argues the merits of his underlying grounds for relief. *See* Docs. 1-1, 16, 20.

Moreover, although Petitioner does not specifically assert it, the undersigned notes that it is well-settled in the Sixth Circuit that petitioner's *pro se* status or lack of actual knowledge of the filing requirement is not sufficient to warrant equitable tolling. *See also Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("[W]e note that Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing."); *Hall*, 662 F.3d at 751 (holding that prisoner's *pro se* status and lack of access to a law library was not an exceptional circumstance that justified equitable tolling); *Allen v. Yukins*, 366 F.3d 396, 402 (6th Cir. 2004) ("Even if Allen lacked actual knowledge of the relevant provisions of AEDPA, this court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling.'" (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations").

Because Petitioner has not demonstrated an entitlement to equitable tolling, his Petition remains untimely unless he can show "actual innocence".

*Actual Innocence*

Actual innocence, if proven, can excuse a statute of limitations bar to review of a petitioner's claims but requires the petitioner to demonstrate that "in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *Id.* at 392. "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to advance a credible actual innocence claim, however, the petitioner must support his allegations with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

The Supreme Court has repeatedly counseled that actual innocence is an exception that is rarely granted, and only in the most extraordinary circumstances. *See id.* (reasoning that, because new reliable evidence will be "unavailable in the vast majority of cases, claims of actual innocence are rarely successful"); *see also McQuiggin*, 569 U.S. at 386 ("We caution, however, that tenable actual-innocence gateway pleas are rare."); *House v. Bell*, 547 U.S. 518, 538 (2006) ("The *Schlup* standard is demanding and permits review only in the 'extraordinary' case.") (quoting *Schlup*, 513 U.S. at 327)).

Although Petitioner alleges defects in the underlying criminal process, and asserts that "[i]t would surely be a 'miscarriage of justice' to allow the obvious due process violation to pass" (Doc.

1-1, at 32), he does not assert factual innocence of the underlying crimes. As such, Petitioner cannot avail himself of the "actual innocence" exception to the AEDPA statute of limitations. Further, even if he presented such an argument, Petitioner has not presented any "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" in support of such a claim. *Schlup*, 513 U.S. at 324.

Therefore, for the reasons stated above, the undersigned finds that Petitioner's one-year AEDPA statute of limitations expired on December 13, 2017. As Petitioner has not shown entitlement to any other basis for tolling, his Petition – filed June 10, 2019 – is untimely and must be dismissed. *See* 28 U.S.C. § 2244(d)(1)(A).[12]

Remaining Motions

*Motion for Summary Judgment (Doc. 16)*

The undersigned recommends Petitioner's motion for summary judgment (Doc. 16) be DENIED as MOOT because, for the reasons stated above, the Petition is time-barred and Petitioner is not entitled to summary judgment.

*Motion for Leave to Supplement Motion for Summary Judgment (Doc. 20) / Motion to Proceed with Judgment of Summary Judgment (Doc. 21) / Motion for Leave to Supplement Motion for Summary Judgment (Doc. 23)*

Because the undersigned recommends the motion for summary judgment be denied as MOOT for the reasons stated above, the undersigned also DENIES these three motions related to summary judgment (Docs. 20, 21, 23) as MOOT.

*Supplemental Motion to Moot Motion Immediate Answer from Respondent (Doc. 11)*

In this motion, filed prior to the due date for Respondent's Answer, Petitioner requested

---

12. Because the Petition can be resolved in its entirety based on the time bar, the undersigned declines to reach Respondent's additional arguments regarding procedural default and the merits of Petitioner's grounds.

the Court not permit Respondent any further extensions of time. (Doc. 11, at 1). Respondent filed

his Answer/Return of Writ, *see* Doc. 13, and therefore this motion is DENIED as MOOT.

*Motions for Handwriting Analysis (Docs. 9-1, 12)*

In these two motions, one filed before the filing of Respondent's Answer (Doc. 9-1), and

one filed after (Doc. 12), Petitioner seeks handwriting analysis of certain exhibits "to determine if

the documents were all signed by the same person." (Doc. 9-1, at 1). Petitioner alleges that the

complaints underlying his convictions "are forgeries". (Doc. 12, at 2). Again, because the Petition

is time-barred, and Petitioner has not shown the requested discovery would impact the above

analysis regarding the statute of limitations, these motions are DENIED as MOOT. *See* Rule 7 of

the Rules Governing Section 2254 Cases ("*If the petition is not dismissed*, the judge may direct

the parties to expand the record . . .") (emphasis added); Rule 6 of the Rules Governing 2254 Cases

("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of

Civil Procedure and may limit the extent of discovery.").

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition

(Doc. 1) be DISMISSED as untimely-filed and Petitioner's Motion for Summary Judgment (Doc.

16) be DENIED as MOOT. Petitioner's remaining motions (Docs. 9-1, 11, 12, 20, 21, and 23) are

DENIED as MOOT.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court

within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).